# Martin Harless and John B. Adams, plaintiffs in error, *vs.* The United States, deffendant.

### *Error to Johnson.*

An indictment for betting on a horse race cannot be sustained under the act against gaming. Horse racing is not a game of chance.

A residence of six months in the territory entitles a person to set as a grand juror, although he may have resided a portion of that time in the Indian territory.

At the November term 1841 of the District Court of Johnson county, Martin Harless and John B. Adams were indicted for unlawfully betting, one with the other, to wit: the said Martin Harless bet a mare against a horse bet by the said John B. Adams, on the event of a certain horse race, at the county aforesaid on the 31 July 1841, then and there run between the said Martin Harless' horse and the Freelan & Co's mare, the said Adams winning the bet, &c.

At the May term 1842 the defendants appeared and moved the court to quash the indictment on the following grounds:

22

1. That said indictment did not charge against said defendants any crime or misdemeanor under the law of this territory, or the laws of the United States.

2. That the statute under which the defendants were indicted was repealed.

The motion to quash was overruled. The defendants then by Bates, Harrison and Folsom, their attorneys, filed their plea in abatement and prayed judgment because Levi Colton, one of the grand jurors who found the indictment was not a qualified elector of the territory, for the reason that said Colton had not lived and resided in said territory six months immediately previous to the finding of said indictment.

To this plea, Carleton, prosecuting attorney, replied that said Levi Colton was a qualified elector at the time of finding the indictment.

It was then agreed between the prosecuting attorney and the defendants counsel that the issue of qualification should be submitted to the court. It was proved that the said Colton had resided for two years immediately preceeding his selection as a grand juror, about 25 miles west of Iowa City, the county seat of Johnson county, in the territory of Iowa, and on the land belonging to the Indians, but within the limits prescribed by the act of Congress, as constituting the boundary of the territory of Iowa, with the exception of about five and a half months immediately preceding his selection as a grand juror, during which time he had resided in Johnson county. To this testimony the counsel for the prosecution demurred as not being sufficient to sustain the plea in abatement and prayed judgment. The demurrer to the evidence was sustained and the defendants required to answer over to the indictment. The defendants then pleaded not guilty, went to trial, were found guilty and fined ten dollars each.

To reverse this judgment the defendants below have brought their writ of error and assign for error:

1. Said court erred in overruling said motion to quash said indictment.

2. The court ought to have sustained said defendants plea in abatement.

3. The said court ought not to have sustained said plaintiffs demurrer to the evidence.

4. Said indictment charged no offence against said defendants, indictable by the laws of this territory.

BATES & HARRISON, for plaintiffs in error.

J. P. CARLETON, for defendant.          u

PER CURIAM, MASON, CHIEF JUSTICE.—We shall first consider, whether the court erred in sustaining the demurrer to the evidence given to sustain the plea in abatement.   Was Colton a qualified grand juror ? He had resided in Johnson county less than six months, but he had lived for about two years in the Indian country, within the limits of the territory as prescribed by the act of Congress.

The statute renders him a good grand juror if he was a qualified elector.   Laws of 1838-9, page 277.   To be qualified as an elector he must have resided in the territory at least six months immediately previous to his application to vote.   Page 188, same volume.   Is a residence in the Indian country, under such circumstances, a residence *in this territory*, within the meaning of the statute ?   We think it is.

It seemed to be assumed in the argument that his residence in the Indian country had been illegal, and that therefore he ought not to acquire a legal priviledge through a violation of the law.   But what evidence have we that his residence there was unlawful ?   The territory of of Iowa extends to the limits fixed by the act of Congress and is not confined to that portion to which the Indian title had been extinguished. Six months residence within the territory immediately previous to, and an actual residence in the county at the time of his selection and service constituted him a legal grand juror, so far as residence is concerned.

A more substantial objection is set forth, in the fourth assignment of errors, that no indictable offence is charged in the indictment.   Is betting on a horse race indictable under our gaming act ?

Two positions are taken by the counsel for the defendant in error, to sustain the affirmative of this question : 1, That all betting is indictable under that act.   2, That horse racing is a game of chance.

The fourth section of the act provides that " every person who shall bet any money or property, or play at or upon any gaming table, bank or device, prohibited by the preceeding section, or who shall bet upon or play at any game played at or by means of any such gaming table, &c., shall on conviction thereof be adjudged guilty, " &c.   It is contended that every person who shall bet any money or property on any occasion is rendered liable to the penalty, and that this phrase in relation to betting is entirely independent of the words which immediately follow.

If every person who shall on any occasion bet any money or prop-

erty, is liable under this statute, the second branch of the section "*or who shall bet upon* or play at," &c., is clearly superfluous so far as relates to betting.

The title of the act is "An act to prevent and punish gambling," and the whole scope and object of the statute seems to be to prevent and punish games of chance, or at least all betting and staking money thereon. If it had been the intention of the legislature to have prohibited all betting in such a statute, would they not have used more unequivocal language? In lugging in such a provision by the head and shoulders they would certainly have spoken so as not to have been misunderstood.

Now the first branch of the section in question when interpreted by the *rules* ordinarily applied to legislative language is so far from having an *evident* meaning like that put upon it by the counsel for the defendant in error, conveys, we think, an evident signification to the contrary. It should be construed as though it read "every person who shall bet any money or property *upon* or play *at* any gaming table," &c. In fact that form of expression is used in the second branch of the section which reads "or who shall bet *upon* or play *at* any game," &c. This second branch is merely a variation of the first, such as is frequently used in legal enactments for greater certainty. The first prohibiting betting or playing at or upon any gaming table, &c., and the second contains a prohibition against betting upon or playing at the game itself. The language of the second clause therefore throws light upon the meaning of the first, and renders it evident that all kinds of betting are not reached by this statute.

But it is contended that horse racing is a game of chance and that therefore the case is brought within the statute. The argument used in this case, if sound, would prove that perhaps every uncertain event was a game of chance. Not only would every *game* be of this description but all the uncertainties with which this world is crowded become games of chance. If this was the view of the legislature why did they not use different language? If they intended to include in one sweeping phrase every thing but mathematical calculations (for every thing else is more or less mixed up with uncertainties) they certainly used most extraordinary language.

Penal statutes must not be construed to embrace cases not clearly within their provision. The word *game* does not embrace all uncertain events, nor does the expression "*games of chance*" embrace all *games*. As generally understood, games are of two kinds, games of

chance, and games of skill. Besides there are trials of strength, trials of speed, and various other uncertainties which are perhaps no games at all, certainly they are not *games of chance.* Among this class may be ranked a *horse race.* It is as much a game for two persons to strive which can raise the heaviest weight or live the longest under water, as it is to test the speed of two horses.

It is said that a horse race is not only uncertain in its result, but is often dependant upon accident. So is almost every transaction of human life, but this does not render them games of chance. There is a wide difference between *chance* and *accident.* The one is the intervention of some unlooked for circumstance to prevent an expected result, the other is the uncalculated effect of mere luck. The shot discharged at random strikes its object by chance; that which is turned aside from its well directed aim by some unforseen circumstance misses its mark by accident. In this case, therefore, we reasonably feel disappointed, but not in the other for blind encertainty is the chief element of chance. In fact pure chance consists in the entire absence of all the means of calculating results, accident in the unusual prevention of an effect naturally resulting from the means employed. That the fleetest horse sometimes stumbles in the race course and leaves the victory to its more fortunate antagonist is the result of accident, but the gambler, whose success depends upon the turn of the cards or the throwing of the dice, trusts his fortune to chance.

It is said that there are strictly few or no games of chance, but that skill enters as a very material element in most or all of them. This however does not prevent them from being games of chance within the meaning of the law. There are many games the result of which depends entirely upon skill. Chance is in no wise resorted to therein. Such games are not prohibited by the statute. But there are other games, which although they call for the exercise of much skill, still there is an intermingling of chance. The result depends, in a very considerable degree, upon sheer hazard. These are the games against which the statute is directed, and horse racing is not included in that class. We think, therefore, the indictment in this case charged no indictable offence against the defendants below, and that the judgment below should therefore be reversed, which is accordingly done.